All right, our next case for today is Quincy Bioscience against Ellishbooks. Council can come up. Mr. DeWitty. Thank you very much for your time this afternoon. My name is Robert DeWitty. I represent Ellishbooks and Ellishbooks Corporation. I first like to start off with highlighting a few points in this case. Point number one, in plaintiff Quincy Bioscience's complaint, an amended complaint, they brought reference to an allegation of stolen. Point two, which is following the default judgment, the March 12th hearing, the aspect of treble damages was brought forth by plaintiff Quincy Biosciences. Point three, following up the court, during the discussion on treble damages, the court itself made an inquiry of plaintiff Quincy Biosciences. The inquiry was how do they support their allegation of stolen. Point five, Quincy Biosciences admitted and stated, in fact, we have no facts, we have no knowledge of the product itself being stolen. So Mr. DeWitty, the thing is it's a default judgment. Yes ma'am. When there's a default judgment, the plaintiff no longer bears any burden of proving the facts that would underlie that judgment. If you will, to use some old-fashioned terminology, the cause of action merges into the judgment and the only thing that's left to determine are the damages. So had you answered and gone to trial on these points, I think these all would have been issues that you would have wanted to explore, but it's a default judgment. Yes ma'am, you're accurate. It is a default judgment. As I said, there are points, however, that does not hold true for damages. No, it doesn't, but the underlying facts are proven by the judgment. So whether it was stolen, you know, all of those things are things that go to liability. Yes it does, Your Honor, I do acknowledge that, but as I said before, facts are brought forth during a damages hearing. And in this case, the damages hearing, the issue was brought forth by plaintiff themselves, treble damages. They requested treble just didn't go the way the plaintiff thought it would go. The district court itself made the inquiry. We did not make the allegation. The district court itself made the inquiry. How do you prove? How do you show? How do you support stolen goods? To which plaintiff themselves admitted, we have no, we have no facts. We have no knowledge of these stolen goods. Now, whereas we are looking at it. Why is that we have to assume that for this litigation, these books were stolen. And so there's a prove-up about damages. One could imagine, you know, measures of damages. How much do you sell? Do you do profits? Do you do lost business? You know, there are all kinds of things that come up in damages. Yes, Your Honor, if I could, I don't know where the assumption comes from. In People v. Grodd-Kidwitz, four factors were brought forth to establish receipt of stolen products. The first product, the first factor is, in fact, that the goods were, in fact, stolen. It's not that. It's assuming they're stolen. What is the loss on the part of the company that is the victim of that theft? You know, your client is in a position to be arguing that you have a right to sell stolen goods, which is a somewhat unusual position to me. Well, I don't see how this, how the district court, as well as how this court, can assume stolen when plaintiffs themselves admitted they have no knowledge that the goods were stolen. Because there's a finding of fact that merged into the default judgment. However, that, the fact that. You're trying, you didn't move to reopen the default. Yes, yes, yes, Your Honor. However, we are looking at, the issue came up, a factual determination was made based on the inquiry by the district court as to how do they support stolen. But the point is, if it's a default judgment, it's as though you stood up and said, we don't contest anything. That's effectively what you did. Yes, Your Honor, I do understand that. So you can't dig back into the elements of the claim that you've conceded was proved. However, we are looking at treble damages. It doesn't matter. That's a different issue. That goes to, what's the measure of damages, how many units are we talking about, what was the price, you know, what sales were lost. Well, it sounds like to me, Your Honor, you're asking about a factual inquiry. Those are facts that you're trying to bring forward. Well, the district court allows pre-hearing discovery with respect to damages. There's a prove-up hearing. Quincy submits evidence of damages to the tune of about $480,000. Yes, Your Honor. So there, however, that sounds like facts to me. But I think we can't ignore the other fact as well. Plaintiff also brought up the issue of treble damages. So you're saying what you're telling me is that we can look at the factual inquiry for these damages, but we can't look at the inquiry for treble damages. And I don't think that's what it's saying either. So by opening up the floor for treble damages, yes, they opened the door. The fact came into the case whereby they admitted, hey, we have no evidence. There's nothing here. So you're telling me that at this point we need to acknowledge the factual determination by them that they have no evidence. And the order which was issued by the district court indicated, well, there is evidence of the, my client defended, knew or should have known of stolen product. When plaintiff themselves acknowledge, hey, we have no knowledge of stolen products. So on one hand, you're saying my client should have known about stolen products. When defendant already, plaintiff already admitted, we have no knowledge. I'm saying your client conceded all of the elements of the claim, had the opportunity, and you argue the damages should be limited to $30,000, as was your right. The district court winds up deciding the damages except basically the Quincy numbers, the $480,000 some numbers, and then adds the injunction once we have a little bit of back and forth about the form of the injunction. So that's where we are. You could be here arguing, no, the damages were closer to $30,000, but for some reason you're not doing that. Well, you know, and I'll close with this. My client was very bothered by the allegation of being stolen merchandise. And I do understand we are under default judgment. Should have answered the complaint and defended then. We can get out when I close with that as well, Your Honor. I'll draw some reference to it. However, it's that I don't see how we can cut off one aspect, talking about one aspect of damages, and not considering the other aspect of damages. The other aspect of damages, those main treble damages, they were discussed. Factual inquiry was made, not by defendant, but by the district court. And the district court, why would they make that inquiry? How do you support stolen merchandise? So you're asking us to ignore something that's clearly on its record, on base, which is not just that there was a lack of evidence. We're not talking about a lack of evidence. We are talking about admission that there is no evidence. We have no knowledge. But yet it made its way in the order. It's a clear contradiction between the order and the facts, the lack of evidence, lack of knowledge admitted to by Plankton Biosciences. Okay, well if you want to save a little bit for rebuttal. Thank you. Mr. Critt. Good morning. I'd like to start with clarifying exactly what the issue is that's been appealed. Appellants have not even appealed damages. They've appealed the narrow issue that the section of injunctive relief, as you note, to permit them, that bans them from selling stolen products, should be taken out of the injunction or remanded to have it taken out of the injunction. As noted, this was the damages here. After default, we still have to show our damages. And we raise this in an element of increased damages. This did not, the issue as far as the injunctive relief is decided, if not at the time of the default judgment, when we appeal, or when we move the modify, and we say to the court, you know, we thought that the injunctive section was already granted, but we'd like to have this in the order. And they don't show up. They don't respond. They don't turn up at the notice. They don't submit anything. They don't later say, oh wait a second, even after having heard all this, they didn't have any evidence. They just ceded it. They erase it for the first time here on appeal. Now as to, so even if we ignore all of that, this argument that there was no evidence of stolen goods, first of all, our complaint lays out why we believe this. We talked about, the complaint talked about our markings on bottles that would indicate source that aren't, that we believe the evidence would show weren't there, but hidden RFID and security tags which would show these didn't come from wholesalers, these came from retail stores, and then we allege, we gave them full notice. We think this stuff was stolen from the retail stores, and we think that you knew about it, or had reasons to know about it. And their own authority shows, even if they don't have actual knowledge, if they have knowledge of the circumstances that would indicate the goods are stolen, that that's sufficient. And as the court, or as your Honor has noted, that's admitted. No, we're not omniscient. We don't have, we don't monitor the dark web. We don't have access to their emails. We don't know what warehouses they've gone to. If they had complied with discovery, we might have been able to match some of those up with the ones that we knew, but we just never got to that stage. And now they turn around and say because we didn't answer, and we didn't produce any of this stuff, gotcha. You're not omniscient. You admitted exactly what you said in your pleadings. It's on information and belief. Therefore, this has to be undone. So we think that there was clear waiver. We think that there was evidence from the allegations of the complaint, and we also think it's pretty clear the judge made a negative inference. She said point-blank to them, to counsel. You don't get to pick and you respond to. There was some discovery for damages or that we requested in our motion for the default judgment prior to the prove-up. And she says, I think she ends it by saying, and that's what happened in this case. So there was that that the court was allowed to rely on. Now they didn't grant us the treble damages. That's what I thought I remembered. For all this talk about treble damages, you didn't get it. We didn't. You got the actual damages. That was your number, the 480-968, whatever. Counsel's argument in response to that was, well, what the evidence showed in the hearing we presented it, that they started to turn a blind eye, at least to the stuff that they identified. Eighty percent we don't know. They didn't know that we had gotten discovery from Amazon. The court had granted third-party discovery, and it showed that they were selling far more product than what they were able to sell. So we thought, okay, well, where'd all this inventory? Where is this inventory? Is it in a warehouse? How did you get this? And we never got it. This stuff sold everywhere, right? Amazon, CVS, Walgreens, so on. And it's here, you know, it's pricier than vitamins. And so it's very attractive to shoplifters. There's ways along the lines that you can make it. Again, we know that this stuff, you know, we know that this enterprise is going on. And they were selling it under your name, under the, how do you pronounce it, Prevagen? They were selling, yeah, they were selling this as Prevagen. Interestingly, when they did, is that a trade name? Yeah, that's our registered trademark. It's interesting, when they did, they did protest the default judgment. They could have said at that point, one of our meritorious defenses is, you want to injunct, this injunction, we didn't know that it was stolen, or we don't even think, we dispute that it was stolen or whatever. They didn't make that. The defense that they did make was actually, it's a little convoluted, but it looks like what they said was, we've taken your product and we've rebranded it under some other label. That would be reverse palming off. That would also be trademark infringement. But it was a little, it was either that or they were saying, oh, we've never sold anything under Prevagen. And if you see our reply brief and the submissions by Prevagen's loss investigator, we had ample evidence that they were selling Prevagen. I guess I might add one more point, is that the court ordered after that, the court actually ordered what at the time Prevagen claimed was the sole owner, operator, manager of the company to appear. And they did not appear. So we think that there was, there was definitely no basis to say that there was either clear error or an abuse of discretion. We think the abuse of discretion applies for the injunctive component and that the injunction against them selling stolen product should stand. All right. Thank you very much, Mr. Gritt. And you have a little bit more than a minute, Mr. DeWitty. Stop that thing. Yeah, there you go if you want. Just the right height. Your Honor, so my, you know, just to give you some, some viewpoint on my client, my client is, lives in a Hasidic community right outside of New York. They run a small family business. Are you actually challenging any part of this injunction? Yes. The stolen merchandise, which is why we're here. But you're not challenging. We're challenging the language. Why would you care if there was an injunction that said, and we won't sell stolen merchandise? Well, yes, Your Honor. And I assume your position is that you're not doing that anyway. Exactly. And I won't go out there and rob someone after I get out of here today. So, so basically, you know, that language, when you have an idea of who my client is, the family business they run, the language that's included in this injunction is quite insulting to them. It alludes that they are guilty of some sort of criminal enterprise, which they're not. Well, trademark infringement. Well, trademark infringement, but I wouldn't necessarily call that a criminal enterprise. For example, if you go to Marshalls, if you go to Kohl's, TJ Maxx, these are some of the largest retailers out there today. You have to wonder, where do they get their hundreds and hundreds of products and brands that they sell in their stores? I don't think they're This is called retail arbitrage. And that is the practice my client was practicing under. He would buy a product from someone who didn't, the product wasn't selling well, it wasn't moving well, they would buy it at a discount and they would sell it. Perfectly legal. Perfectly legal. Trademark infringement, I don't think so, but we're not challenging that. What we are challenging is the inference that they were part of a criminal enterprise selling stolen merchandise, which they clearly were not, and as plaintiff admits, they're too. Thank you. All right. Thank you very much. Thanks to both counsel. We'll take the case under advice.